# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-0440V

|  |  |
|---|---|
| WENDY HUBBARD, | Chief Special Master Corcoran |
| Petitioner, | Filed: September 26, 2024 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Richard Gage, Richard Gage, P.C., Cheyenne, WY, for Petitioner.*

*Katherine Edwards, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On March 29, 2023, Wendy Hubbard filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received in August 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find that Petitioner's flu vaccine was likely administered in her left arm.

## I.        Relevant Procedural History

After the case was activated, Petitioner filed additional evidence addressing the situs of vaccine administration (ECF No. 20). On August 16, 2024, Respondent filed his Rule 4(c) Report asserting that compensation is not appropriate in this case (ECF No. 23). Respondent's sole objection was that the vaccination record states that Petitioner received the flu vaccine in her right deltoid, while her claim is for an injury to her *left* deltoid. Thus, Respondent argued that Petitioner had not preponderantly established that her pain and reduced range of motion were limited to the shoulder in which the vaccine was administered. On the same day, Respondent filed a status report requesting that I determine in which arm Petitioner's August 2021 flu vaccine was administered (ECF No. 24).

## II.        Issue

At issue is whether Petitioner received the vaccination alleged as causal in her injured left arm. Additionally, some records suggest that the vaccine was administered on August 18, 2021, while others suggest a date of August 20th.

## III.        Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of*

*Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Finding of Fact

I find that the evidence preponderantly supports a finding that Petitioner's flu vaccine was administered on August 18, 2021 in her left arm. I make these findings after a complete review of the record to include all medical records, testimonial evidence, Respondent's Rule 4 report, and additional evidence filed. Specifically, I base the findings on the following evidence:

- The Walgreens vaccine administration record, on which an "R" is handwritten for the "Site of Administration," and which lists a vaccine administration date of August 18, 2021 (Ex. 1 at 4);

- A Walgreens vaccine consent form for a flu vaccine signed by Petitioner on August 18, 2021 (Ex. 1 at 7);

- A Walgreens "Insurance Profile" for Petitioner listing a flu vaccine with an "Entered Date" of August 20, 2021 (Ex. 1 at 2);

- Petitioner's September 9, 2021 appointment with Dr. Wanika Williams, at which she complained of left arm pain for three weeks after her flu vaccination and explained that she "believes the injection was too low and it is on the back of her arm." Ex. 2 at 99-100. Dr. Williams noted that the "[l]ocation of wound did appear posterior and lower than where it should have been given, if that was the original injection site." *Id.* at 103. Petitioner was diagnosed with adhesive capsulitis of her left shoulder and an adverse effect of vaccine (*Id.*);

- Petitioner's November 10, 2021 appointment with orthopedist Dr. Christina Walker for left shoulder pain that "began immediately after her flu injection" that she "receive[d] in an abnormal location." Ex. 2 at 116-120;

- Petitioner's March 10, 2022 appointment with orthopedist Dr. Mohammed Qureshi for left shoulder pain and weakness, at which she stated she "initially was injected with a flu shot which triggered her symptoms" (Ex. 2 at 125);

- Petitioner's affidavits and declaration stating that she received a flu vaccine in her left shoulder on August 20, 2021 at her place of employment in Texas. Ex. 8 at ¶ 2; Ex. 9 at ¶ 2; Ex. 10 at ¶ 2. Petitioner explains that she asked the person administering vaccines to inject the vaccine in her right arm, which that person marked on her paperwork. Ex. 10 at ¶ 3. However, another member of the Walgreens team then appeared and told the person who had marked the form to take her lunch break and that an intern would take over administering vaccines. *Id.* at ¶ 4. Petitioner states that "[t]he

4

intern that took over for the woman who wrote on my paperwork did not look at the paperwor[k], or even ask me which arm I preferred. Before I knew it, she was prepping my left arm, and quickly administered the vaccine in my left shoulder." *Id.* at ¶ 5.

The above-referenced evidence allows for the conclusion that, more likely than not, Petitioner's August 2021 flu vaccine was administered (1) in her left arm and (2) on August 18, 2021. Although the vaccine administration record has an "R" for the situs, supporting the determination that the vaccine was in fact administered in Petitioner's right arm, there is *no other evidence* that would support that situs. *All* of the remaining evidence supports a conclusion that the vaccine was injected into Petitioner's left arm. Thus, when seeking medical care, Petitioner consistently reported to her treaters that her left shoulder pain resulted from a vaccination. The short period of time between vaccine administration and Petitioner's first medical treatment for vaccine-related shoulder pain – approximately three weeks – also bolsters her claim that her left shoulder pain was due to a recent vaccination in that arm.

There is record evidence suggesting that the vaccination date could be either August 18 or August 20, 2021. The Petition, as well as Petitioner's affidavits and declaration, assert that the vaccination was administered on August 20, 2021. Pet. at 1; Exs 8, 9, 10. And a Walgreens insurance profile indicates that the vaccine information was "entered" on August 20, 2021. Ex. 1 at 2. However, the vaccine administration record lists an administration date of August 18, 2021, and Petitioner signed the consent form on August 18th. *Id.* at 4, 7.

I find that the evidence supports a more likely vaccination date of August 18, 2021. The best evidence of the vaccination date is the vaccination record itself, which has a vaccination date of August 18th. Ex. 1 at 4. But it is supported by Petitioner's consent form, which is also dated August 18th. *Id.* at 7. Although another Walgreens document has a date of August 20th (Ex. 1 at 2), that is listed as an "entered date" rather than a vaccination date, suggesting it could be the date when the vaccination information was entered into a system for insurance billing purposes rather than the vaccination date. Although Petitioner's affidavits and declaration state she received the vaccine on August 20th, that could be based on the Walgreens "entered date," or imperfect memory. That Petitioner's testimonial statements appear to contain incorrect information does somewhat reduce their evidentiary value. But I find her statements reliable enough to support the medical record evidence as to the situs of vaccine administration.

The most specific and contemporaneous records are the vaccine administration record and Petitioner's consent form. And both of those records list a date of August 18, 2021. Thus, I find a preponderance of the evidence supports a finding that Petitioner's flu vaccine was administered on August 18, 2021 in her left arm.

**V.     Scheduling Order**

Respondent shall file, by no later than <u>Wednesday, November 06, 2024</u>, either an amended Rule 4(c) Report or a status report stating how Respondent wishes to proceed in this case in light of my fact ruling herein.


IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master